IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA PAYNE, | : | Civil No. 3:12-CV-1932 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| JOHN WETZEL, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

Joshua Payne, a state inmate who allegedly suffers from profound mental illness, continues what we have previously described as a slow and painful progress towards a legally sufficient complaint in this *pro se* prisoner lawsuit.  That journey began on September 27, 2012, when this Court ordered Payne to file an amended complaint in this case. (Doc. 1.)  Prior to September 2012, Payne had been named as a plaintiff in a lawsuit filed by another prisoner, a practice which is not permitted and necessitated the instruction to Payne to file a complaint in his own name.  (Id.)

On October 22, 2012, one week after the filing deadline prescribed by the Court, Payne submitted this amended complaint. (Doc. 8.)  The defendants moved

to dismiss this amended complaint, citing numerous deficiencies in this pleading, (Doc. 15.), and Payne responded by seeking leave to file a second amended complaint, (Doc. 24.), a request which was granted on March 15, 2013. (Doc. 27.) Payne's second amended complaint was filed that same day. (Doc. 28.)

In this second amended complaint Payne explained that he is a deeply troubled individual who suffers from profound mental health impairments, including schizophrenia, and that he has on multiple occasions attempted suicide or engaged in self-harm while in custody. For a substantial period of time, Payne has been housed within the Special Management Units at SCI-Camp Hill and, before that, at SCI-Greene, apparently due to serious, unspecified infractions of institutional rules. Payne's continued confinement in the SMU, and his alleged lack of access to adequate mental health services while housed in such a restricted environment, formed the gravamen of this civil action, which Payne brought against the Secretary of the Pennsylvania Department of Corrections, John Wetzel; Assistant Superintendent of SCI-Camp Hill, Jeff Ditty; and unidentified members of the Program Review Committee and the Psychiatric Review Team, apparently both at SCI-Greene and SCI-Camp Hill.[1]

---

[1] The plaintiff asserted that the PRC consists of three staff members who conduct administrative custody hearings, and periodic custody reviews, and makes decisions regarding an inmate's continued custody in an SMU or other restricted

According to plaintiff, he believed that prison staff misdiagnosed him as having a behavior problem in order to justify keeping him housed in an SMU, as opposed to transferring him to an environment where his mental health needs can be more appropriately treated.  (Id., ¶ 35.)  In this regard, the plaintiff alleged that while housed at SCI-Greene, he had been misconduct-free for 14 months, and had also attempted suicide on four occasions, but nevertheless was found suitable for placement in the SMU.  (Id., ¶ 37.)  Payne alleged that he requires a permanent placement in a mental health facility where he believed his mental health needs can be met, and he argued that his continued housing in an SMU is inappropriate, has a negative effect on his mental condition, and exposes him to forms of "inappropriate punishment."  (Id., ¶ 38.)

On the basis of these allegations, the plaintiff purported to bring five separate claims, including denial of mental health treatment and deliberate indifference to serious medical needs, in violation of the Eighth Amendment (Counts 1 and 2); denial

---

housing unit (RHU).  Additionally, the plaintiff alleged that the PRC hears all first-level appeals of misconducts issued to inmates.  (Doc. 28, ¶ 7.)  The plaintiff contends that the Psychiatric Review Team is a team chaired by the correctional institution's Chief Psychologist or his designee, and includes the Consulting Psychiatrist, Unit Manager and other staff that may be designated by the Facility Manager.  According to Payne, the PRT reviews the cases of inmates who experience adjustment or behavioral difficulties related to emotional problems, and who require more in-depth evaluation and closer monitoring than other inmates, or otherwise need additional support.  (Id., ¶ 8.)

of the plaintiff's right to freely exercise his religious beliefs in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA") (Count 3); denial of due process and equal protection, in violation of the Fourteenth Amendment (Count 4); and a claim for "personal involvement/supervisor liability" with respect to the deliberate indifference claims (Count 5). The plaintiff sought compensatory and punitive damages from the defendants individually.

On June 24, 2013, the defendants moved to dismiss this second amended complaint. (Docs. 41 and 42.) We then filed a document which placed Payne on notice that we considered this second amended complaint to be legally deficient on a number of grounds. (Doc. 46.) In particular, we noted that some of the institutional defendants named by Payne, prison PRC committees, were not proper parties, and that Payne had not pleaded sufficient facts to sustain supervisory liability claims against defendants Wetzel and Ditty. (Id.) We also noted that many of Payne's claims appeared to be time-barred. (Id.) We, therefore, put Payne on notice that we were recommending dismissal of the second amended complaint without prejudice to Payne attempting to further amend his pleading to state a claim upon which relief may be granted. (Doc. 46.)

On December 23, 2013, Payne responded to this notice from the Court by filing a third amended complaint. (Doc. 48.)  Unfortunately, this document did not contain a recital of well-pleaded facts, but rather simply provided something in the nature of a summary list of claims and parties, without supporting factual details. (Id.) Moreover, this document, like Payne's original complaint, bore the hallmarks of having been prepared by another inmate, who was only identified as Payne's "next friend."  (Id.)

The defendants then moved to dismiss this third amended complaint noting that it continued to fail to state a claim upon which relief may be granted.  (Docs. 54 and 55.)  Payne opposed this motion, (Doc. 57.), but also sought leave to file what would have been his fourth amended complaint.  (Doc. 59.)  This motion to amend was unaccompanied by any brief, and Payne did not provide us with a copy of his proposed fourth amended complaint as required by Local Rule 15.1.  Thus, Payne's latest motion to amend "was noncompliant with Middle District of Pennsylvania Local Rule 15.1, inasmuch as it contained only . . . vague paragraphs and failed to contain a proposed amended complaint." Kearney v. Sheffield, 1:13-CV-1851, 2014 WL 1515640, *2 (M.D. Pa. Apr. 17, 2014).  Further Payne's failure to file a brief in support of this motion also had consequences for the plaintiff since we were entitled to deem the plaintiff to have withdrawn a motion when he failed to properly support

that motion by filing a brief in a timely fashion. See, e.g., Salkeld v. Tennis, 248 F.

App'x 341 (3d Cir.2007) (affirming dismissal of motion under Local Rule 7.5); Booze

v. Wetzel, 1:12-CV-1307, 2012 WL 6137561 (M.D. Pa. Nov. 16, 2012) report and

recommendation adopted, 1:CV-12-1307, 2012 WL 6138315 (M.D. Pa. Dec. 11,

2012); Breslin v. Dickinson Twp., 1:09–CV–1396, 2011 WL 1577840 (M.D.Pa. Apr.

26, 2011) Prinkey v. Tennis, No. 09–52, 2010 WL 4683757 (M.D.Pa. Nov.10, 2010)

(dismissal under Local Rule 7.5); Griffin v. Lackawanna County Prison Board, No.

07–1683, 2008 WL 4533685 (M.D.Pa.Oct.6, 2008) (dismissal under Local Rule 7.6).

On August 29, 2014, we notified Payne of these deficiencies, and advised

Payne that the Court would rule upon the pending motion to dismiss his third

amended complaint, (Doc. 54.), unless Payne filed a proper motion to amend, which

complied with Local Rule 15.1, by providing a full and complete proposed amended

complaint, and brief, on or before September 12, 2014.  (Doc. 61.)  Despite this

express notice, Payne did not comply with this instruction, leaving us to consider the

motion to dismiss his third amended complaint.  Upon consideration of this pleading,

and recognizing that Payne had not complied with our prior orders, on October 17,

2014, we recommended that the motion to dismiss be granted, but that the plaintiff

be given a final opportunity to amend some of his claims.  (Doc. 62.)  On November

26, 2014, the district court adopted this Report and Recommendation.  (Doc. 64.)  In

the meanwhile, Payne filed what was now his fourth amended complaint, (Doc. 63.), and has filed a motion requesting that we direct service of this fourth amended complaint upon all of the defendants named in that pleading.  (Doc. 67.)

Payne's fourth amended complaint repeats his claims regarding his prison mental health treatment and  names 26 defendants, 7 of whom are only identified as "John Doe" defendants.  (Doc. 63.)  Of the remaining 20 named defendants, three appear to be Department-wide supervisory officials,[2] who are identified in the caption of the complaint, but are never mentioned by name in the factual averments of the complaint, beyond a general reference to the fact that Payne's past grievances regarding his mental health placements were denied.  (Id., ¶54.)  Seven of the remaining named defendants are identified as members of the prison Program Review Committees, (PRC) the group that Payne alleges knowingly placed him in appropriate custodial mental health care settings, setting that contributed to what he described as 5 suicide attempts while in custody.[3]  Payne also specifically alleges that three defendants, defendants Winfield, Martin, and Coppoza, affirmatively misled him and

---

[2]These supervisory defendants are defendants Moore, Beard and "John". (Doc. 63,¶¶ 2, 8 and 11.)  It is unclear whether "John" is a proper name or an attempt by Payne to identify a John Doe defendant.  In either event, as discussed below, this pleading is inadequate.

[3]These PRC committee members include defendants Murray, Southers, Henry, Chambers, Zwerzyna, Carberry, and Whalen. (Doc. 63, ¶¶3-7, 9 and 10.)

lied to him about his mental health placement, thus denying Payne the opportunity to object to that placement. (Id., ¶45.)

While Payne makes these allegations regarding these particular defendants, his complaint goes on to name six other defendants, who are identified as prison counselors, psychiatrists, psychologists and staff, but as to whom Payne's fourth amended complaint contains to well-pleaded factual averments.[4]

Upon a review of Payne's fourth amended complaint, and mindful of both Payne's *pro se* status and his reported mental health history, we have construed the fourth amended complaint liberally.   Adopting this liberal construction of this pleading,  for the reasons set forth below, it is recommended that Payne's motion to serve this complaint, (Doc. 67.), be granted, in part, and denied, in part.  Specifically, it is recommended that the complaint be served upon defendants Murray, Southers, Henry, Chambers, Zwerzyna, Carberry, Whalen, Winfield, Martin, and Coppoza, but that the complaint be dismissed for failure to state a claim on which relief may be granted against defendants DePew, Digby, Miller, Kalsky, Kcompt, Pohlmuller, Moore, Beard and John.

---

[4]These defendants include defendants DePew, Digby, Miller, Kalsky, Kcompt and Pohlmuller.  (Doc. 63, ¶¶13-18.)

## II.   Discussion

### A.   Screening of Civil Complaints,  Standards of Review

This Court has an on-going statutory obligation to conduct a preliminary review of complaints filed by plaintiffs who seek leave to proceed *in forma pauperis*. See 28 U.S.C. §§1915 and 1915A.  Specifically, we must assess whether a *pro se, in forma pauperis* complaint "fails to state a claim upon which relief may be granted." This statutory text, in turn, mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. Rule 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court

10

should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must

plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629

F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the

requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what

a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and
> plain statement of the grounds for the court's jurisdiction, unless the
> court already has jurisdiction and the claim needs no new jurisdictional
> support; (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and (3) a demand for the relief sought, which
> may include relief in the alternative or different types of relief.

In this regard, one of the basic requisites for a civil complaint is that it must

recites some essential facts tying the defendants to some alleged misconduct.  This

fundamental requirement is driven both by matters of principle, and by pragmatic

considerations.  As a matter of principle and practice, a basic factual recital is

essential in a complaint because it is simply impossible without such averments to

properly assign individual responsibility to a particular defendant without some

factual description of what has transpired.  Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights.  When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims.  See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).  Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide.  See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

**B.     This Fourth Amended Complaint Fails to State A Claim Upon Which Relief Can Be Granted With Respect to Defendants DePew, Digby, Miller, Kalsky, Kcompt, Pohlmuller, Moore, Beard and John**

Applying these benchmarks we find that Payne's fourth amended complaint still fails to state a claim upon which relief may be granted as to the following defendants: defendants DePew, Digby, Miller, Kalsky, Kcompt, Pohlmuller, Moore, Beard and John. Indeed, Payne's inclusion of these defendants, many of whom have never been previously named by the plaintiff through the three history of this lawsuit, in a fourth amended complaint which fails to describe in any fashion their involvement in the matters set forth in this pleading, aptly illustrates a recurring challenge in this litigation. Throughout these proceedings, Payne's claims have been both largely inarticulate and entirely kaleidoscopic, shifting and changing with each turn of the litigation.

At the outset, we find that dismissal of these defendants is warranted because the fourth amended complaint still fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . *a short and plain statement of the claim* showing that the pleader is entitled to relief." Dismissal of this complaint is appropriate since it is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be

'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).

Here, Payne's fourth amended complaint contains no coherent factual narrative describing a chronology of events and the participation of individual defendants in those events. The complaint, therefore, fails to "contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1).", <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Consequently, with respect to these named defendants we are still "left . . . having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011). In such instances, Rule 8 calls for the dismissal of these defendants from the plaintiff's fourth amended complaint.

In particular, Payne's curious pleading style of naming a number of defendants in the case, but not describing their conduct in the body of his pleading, is legally

16

insufficient to state a claim.  See Walthour v. Child & Youth Servs., 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010)(dismissing claims against defendants only identified in exhibits attached to complaint).  This cursory style of pleading is plainly inadequate to state a claim against any of the individual defendants and compels dismissal of these defendants.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

These deficiencies are particularly marked with respect to the supervisory defendants named by Payne in this his fourth amended complaint, defendants Moore, Beard and John.  In order to prevail on a civil rights claim, a plaintiff must establish that:  (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  Furthermore, it is axiomatic that in order to be liable under § 1983, a defendant "must have had personal involvement in the alleged wrongdoing."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Such personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence.  Rode, 845 F.2d at 1207.  These allegations, however, must be made with sufficient particularity.  Id.

In this regard it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability

for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v.</u>
<u>Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
liability "will only result from his own neglect in not properly
superintending the discharge" of his subordinates' duties); <u>Robertson v.</u>
<u>Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
public officer or agent is not responsible for the misfeasances or position
wrongs, or for the nonfeasances, or negligences, or omissions of duty,
of the subagents or servants or other persons properly employed by or
under him, in the discharge of his official duties").  Because vicarious
liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead
that each Government-official defendant, through the official's own
individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence

of evidence of supervisory knowledge and approval of subordinates' actions, a

plaintiff may not maintain an action against supervisors based upon the misdeeds of

their subordinates.  <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D.

Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa.

2004).  Rather, "[p]ersonal involvement must be alleged *and is only present where*

*the supervisor directed the actions of supervisees or actually knew of the actions and*

*acquiesced in them*.  <u>See</u> Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)."

<u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in this fourth amended complaint Payne does little more than name these

supervisory officials in the caption of the case, and then seek to hold them personally

liable based upon their supervisory status without making any specific factual allegations about these defendants in the body of this pleading.  To the extent that Payne simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants.   Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Payne sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that:  " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.'  Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012).  To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined.  As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another

under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).

Payne's current complaint does not recite sufficient well-pleaded facts to support either of these theories of supervisory liability.  First, Payne has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).  Moreover, there is no claim of supervisory liability here, supported by well-pleaded facts, grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).

Furthermore, to the extent that Payne's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails.  An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate

or respond to his past grievances.  Inmates do not have a constitutional right to a prison grievance system.  Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,

> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, as presently drafted, the plaintiff's claims against these supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case it is clear that as to many of the latest round of defendants named by Payne in his fourth amended

complaint, the complaint still fails to state a viable civil rights cause of action against these particular defendants, and the factual and legal grounds proffered in support of the complaint make it clear that the plaintiff has no right to relief against this named institutional defendant.     Furthermore, Payne has been afforded numerous opportunities to amend his pleadings but to no avail.  On these facts, we conclude that granting further leave to amend with respect to defendants DePew, Digby, Miller, Kalsky, Kcompt, Pohlmuller, Moore, Beard and John would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that the fourth amended complaint be dismissed with prejudice as to these defendants.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's Motion to Serve (Doc. 67.), be GRANTED, in part, and DENIED, in part, as follows:

1.   The fourth amended complaint should be served upon defendants Murray, Southers, Henry, Chambers, Zwerzyna, Carberry, Whalen, Winfield, Martin, and Coppoza.

2.   Defendants DePew, Digby, Miller, Kalsky, Kcompt, Pohlmuller, Moore, Beard and John should be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of March, 2015.


                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge


.